

Dennis I. Wilenchik, #24076205
admin@wb-law.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | |
|---|---|
| **Nomad Capitalist, Limited, a Hong Kong Company,**<br><br>Plaintiff,<br><br>v.<br><br>**Nomad Elite, LLC, a Texas limited liability company, and Arno Gerald Summer, an individual,**<br><br>Defendants. | Case No.: 1:24-cv-01481<br><br>**COMPLAINT**<br><br>**(Defamation, Defamation per se, and Business Disparagement)**<br><br>**(Jury Demand Requested)** |

Plaintiff Nomad Capitalist, Limited, a Hong Kong corporation ("Nomad Capitalist"), by and through its undersigned counsel, hereby files this Complaint against Defendants Arno Gerald Summer ("Gerald Summer" or "Mr. Summer") and Nomad Elite, LLC, a Texas limited liability company ("Nomad Elite"), and alleges as follows:

## **NATURE OF THE ACTION**

1. This is an action for defamation, defamation per se, business disparagement, and false light invasion of privacy arising out of Defendants' false and malicious statements about Plaintiff that have harmed Plaintiff's reputation and business interests.

2. Defendants' wrongful conduct has caused and continues to cause irreparable harm to Plaintiff, including damage to its reputation, business relationships, and potential for future economic gain.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the action is between a citizen of a State in the United States and a citizen of a foreign State and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one Defendant resides in the Western District of Texas and it is believed the events giving rise to this Complaint occurred within this District.

## PARTIES

5. Plaintiff Nomad Capitalist, Limited, is a limited company organized under the laws of Hong Kong with its principal place of business located in Hong Kong.

6. Defendant Nomad Elite, LLC. is a limited liability company organized under the laws of Texas with its principal place of business located at 9901 Brodie Lane, Suite 160 PMB657, Austin, Texas 78748.

7. Upon information and belief, Gerald Summer is an individual that resides in Texas at the following address: 1616 Sycamore Avenue, McAllen, Texas 78501.

## FACTUAL ALLEGATIONS

8. Plaintiff Nomad Capitalist is a business that specializes in providing consultancy services, financial planning, and immigration strategies to high-net-worth individuals seeking to optimize their personal and business interests globally. Plaintiff operates in multiple countries, including the United States.

9. Plaintiff Nomad Capitalist is a respected business within the international community. It has helped more than 1,500 happy clients with their international plans in more than 100 countries. It has a robust internal team of more than 100 professionals, including attorneys, accountants, real estate professionals, and other global experts offering citizenship and

residence strategies, legal compliance, and tax reduction techniques. It has had more than 2,000 media appearances and has been featured, *inter alia*, on BBC, Business Insider, Fox, CNN, Robb Report, and CBS News.

10. Andrew Henderson is the founder and chief officer of Nomad Capitalist, Limited.

11. Andrew Henderson often tests out visa, multiple passport and multiple citizenship opportunities, by applying for them himself, so that he can better advise Nomad Capitalist's clients regarding these opportunities.

12. In the scope of his employment with Nomad Capitalist, Mr. Henderson frequently posts comments and publishes videos on YouTube providing advice and perspectives regarding Nomad Capitalist's consultancy services, financial planning, and international immigration strategies as described above and herein.

13. Andrew Henderson is the face of Nomad Capitalist and is featured in most of the videos that Nomad Capitalist produces.

14. Andrew Henderson's videos, comments, and perspectives are integral to the success, trust, goodwill, and success of Nomad Capitalist.

15. In fact, Nomad Capitalist's YouTube page has more 940,000 subscribers, and some of Nomad Capitalist's videos have received more than 3.5 million views.

16. Defendant Nomad Elite is a competitor in the same industry, providing similar services to individuals and businesses seeking immigration, financial, and business optimization strategies.

17. Upon information and belief, Defendant Gerald Summer is the founder and chief officer of Defendant Nomad Elite.

18. Defendant Nomad Elite also publishes and posts videos on YouTube, substantially all of which feature Defendant Gerald Summer.

19. In or around November 2022, Nomad Elite posted one or more videos utilizing Andrew Henderson's likeness without authorization and making untrue statements about Nomad Capitalist's promotion of a Malaysia visa program.

20. Nomad Capitalist immediately responded with a cease-and-desist letter identifying the false and defamatory statements, but otherwise, chose to take no further action with respect to that specific video.

21. Nomad Elite, however, did not cease and desist from its attempts to defame Plaintiff and/or Andrew Henderson.

22. On or about December 1, 2023, January 1, 2024, and June 8, 2024, Defendants made and published false and defamatory statements about Plaintiff in videos published on Nomad Elite's YouTube channel, including but not limited to:

   a. Defendants falsely claimed that Plaintiff engages in illegal or unethical business practices;
   b. Defendants stated that Plaintiff's services are substandard, misleading, and harmful to clients;
   c. Defendants published statements accusing Plaintiff of fraud, misrepresentation, and dishonesty in its business dealings; and
   d. Defendants made statements suggesting that Plaintiff's clients are being exploited or misled by Plaintiff's services.

23. Defendants Gerald Summer and Nomad Elite made the following false, defamatory, and disparaging statements, which include but are not limited to:

   a. Nomad Capitalist/Henderson "is being defeated in certain locations, why? Real relocation agencies are living in these places." (12/2023 & 01/2024)
   b. Nomad Capitalist/Henderson "is losing many battles"; "he is losing to us in certain countries"; "he is losing to Raphael in Dubai." (01/2024)
   c. "Chances of getting an inferior service are high." (01/2024)
   d. "Some of these [negative] comments I believe were written by family members and close personal friends of Henderson." (01/2024)
   e. Nomad Capitalist "posted lots of inaccurate information" about Paraguay recently on YouTube. (01/2024 comment section)

4

    f. Nomad Capitalist "is a massive brokerage, nothing more." (01/2024 comment section)

    g. Nomad Capitalist's founder, Andrew Henderson, "is not an honest expat; he never integrated anywhere. He speaks zero foreign languages fluently." (01/2024 comment section)

    h. Regarding an ongoing lawsuit: "Contract said that they are going to be doing business with the company that is in Hong Kong, not with Nomad Capitalist LLC that's incorporated in Arizona." (06/2024)

    i. Regarding the same ongoing lawsuit: That Nomad Capitalist "seems to be wanting the best part of the United States law and the business system but they don't want to comply with US legal requirements." (06/2024)

    j. "If this doesn't convince you that NC and Henderson *may be a scam*, I want you to consider the people AH does business with . . . ." (06/2024)

24. These false and defamatory statements were made publicly and have been disseminated via Nomad Elite's YouTube channel to third parties, including potential clients, partners, and the general public.

25. As many as 20 current, former, and potential clients have all raised specific inquiries with Nomad Capitalist regarding Defendants' defamatory videos/comments.

26. Multiple potential clients, who inquired specifically about Defendants' defamatory videos, then decided not to purchase Nomad Capitalist's services.

27. Upon information and belief, additional potential clients watched the defamatory videos and saw the defamatory comments and decided not to utilize Nomad Capitalist's services for that reason.

28. Upon information and belief, multiple current, former, and potential clients have chosen not to use or re-use Nomad Capitalist's services due to Defendants' false and defamatory statements and videos.

5

29. Nomad Capitalist's engagement contracts with individual clients each generate between $15,000.00 and $100,000.00 in revenue, depending on the specific services that Nomad Capitalist is hired to perform for that specific client.

30. A single Nomad Capitalist client that purchases holistic international planning, and also retains Nomad Capitalist's services to implement that plan, frequently results in $100,000.00 in revenue for Nomad Capitalist.

31. As a result, Nomad Capitalist believes that it has lost significantly more than $75,000.00 in revenue due to Defendants' defamation of Plaintiff.

32. The statements made by Defendants were not only false but were made with actual malice, meaning that Defendants acted with knowledge of the falsity of the statements or with reckless disregard for the truth.

33. Straightforward research in the industry by Defendants Nomad Elite and Gerald Summer would have revealed the falsehood of these allegations.

34. Defendants should have engaged in such research prior to engaging in such defamatory, disparaging, and false light allegations.

35. For example, Nomad Capitalist is a legitimate company, not a "scam," as any review of the company's operations would have shown.

36. Likewise, the contract referenced in the June 2024 video said that the contract was between the client and both the company in Hong Kong and the Arizona Nomad Capitalist affiliate, as any review of the contract would have shown.

37. Nomad Capitalist also has many subject matter experts working in numerous areas, including law, tax, and real estate, as even any review of Nomad Capitalist's website would have shown.

38. Each custom-tailored internationalization plan that Nomad Capitalist creates for its clients also involves specific input provided by Nomad's founder, Andrew Henderson.

39. Defendants would have learned each of these points had they engaged in even a simple review of Nomad Capitalist's website or discussed the matter thoroughly with even one

6

former Nomad Capitalist client before falsely alleging that Nomad Capitalist is "nothing more" than a "massive brokerage."

40. As a direct result of Defendants' false statements, Plaintiff has suffered significant harm, including but not limited to:

    a. Loss of business relationships, clients, and possible clients;

    b. Damage to its reputation and goodwill in the industry;

    c. Emotional distress and reputational harm to its officers and employees;

    d. Financial losses resulting from the loss of clients and business opportunities.

41. Defendants' conduct constitutes defamation and business disparagement, and it continues to harm Plaintiff's business interests.

42. In addition to defamation and business disparagement, Defendants' actions also constitute the tort of False Light Invasion of Privacy by publicly portraying Plaintiff in a false light and a misleading light.

43. Furthermore, Defendants' false statements are defamation per se, as they impute criminal behavior (fraud) and suggest dishonesty or unethical conduct in Plaintiff's business practices, which are statements that are considered defamatory on their face.

## CAUSES OF ACTION

### COUNT I
### (Defamation)

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

45. Defendants' statements, as described above, were false and defamatory, and made with actual malice.

46. In addition, Defendants' videos/posts, as a whole, constitute defamatory publications.

47. The defamatory statements were made with the intent to harm Plaintiff's reputation and business interests.

48. As a result of Defendants' defamation, Plaintiff has suffered reputational harm and financial damages.

## COUNT II
### (Defamation per se)

49. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Defendants' statements fall under the category of defamation per se because they impute criminal conduct (fraud) and suggest that Plaintiff is dishonest, unethical, or untrustworthy in its business practices. These are statements that, by their nature, are harmful and damaging without the need for Plaintiff to prove actual harm.

51. In addition, Defendants' videos/posts, as a whole, constitute publications that are defamatory per se because they create the false impressions that because they falsely accuse and portray Plaintiff as being involved in criminal activity (fraud).

52. Specifically, Defendants' statements that Plaintiff is engaged in fraud and misrepresentation damage Plaintiff's reputation in the business community and public perception, which are defamatory on their face.

53. Defendants' statements that Plaintiff is incompetent in its field of business or unfit to practice in its field of business damage Plaintiff's reputation in the business community and public perception, which are defamatory on their face.

54. In addition, Defendants' videos/posts, as a whole, constitute publications that are defamatory per se because they falsely accuse and portray Plaintiff as being incompetent in its field of business or unfit to practice in its field of business.

55. As a result of Defendants' defamatory statements per se, Plaintiff has suffered reputational harm, loss of business, and other economic damages.

. . .

. . .

8

## COUNT III
### (Business Disparagement)

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57. Defendants intentionally and maliciously disparaged Plaintiff's business, services, and reputation by making false and harmful statements that caused damage to Plaintiff's business interests.

58. As a result of Defendants' business disparagement, Plaintiff has suffered economic damages, including loss of clients and business opportunities.

## JURY DEMAND

59. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award Plaintiff actual and punitive damages, in an amount to be determined at trial, for the harm caused by Defendants' defamatory statements and business disparagement;

B. Award Plaintiff general damages based on presumed damage to its reputation;

C. Grant an injunction prohibiting Defendant from making further defamatory statements or disparaging Plaintiff's business;

D. Grant an injunction or other equitable relief requiring Defendant to remove the offending videos from YouTube or any other public media;

E. Award Plaintiff its costs, expenses, and reasonable attorney's fees incurred in this action;

F. Award such other and further relief as the Court deems just and proper.

. . .

. . .

. . .

**RESPECTFULLY SUBMITTED** on December 2, 2024.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff*