WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona 85004

Telephone: 602-606-2810     Facsimile: 602-606-2811

Dennis I. Wilenchik, #24076205
admin@wb-law.com
*Attorneys for Plaintiff*

**FILED**
June 10, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
                DEPUTY

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | |
|---|---|
| **Nomad Capitalist, Limited, a Hong Kong Company, and Andrew J. Henderson, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**Nomad Elite, LLC, a Texas limited liability company, and Arno Gerald Summer, an individual,**<br><br>Defendants. | Case No.: CV 24-1481<br><br>**AMENDED COMPLAINT**<br><br>**(Defamation, Defamation per se, Business Disparagement, Liability for Stalking, Unauthorized Misappropriation of Name and Likeness, Intentional Infliction of Emotional Distress and Punitive Damages)**<br><br>**(Jury Demand Requested)** |

Plaintiffs Nomad Capitalist, Limited, a Hong Kong corporation ("Nomad Capitalist"), and Andrew J. Henderson (together "Plaintiffs") by and through their undersigned counsel, hereby file this Complaint against Defendants Arno Gerald Summer ("Gerald Summer" or "Mr. Summer") and Nomad Elite, LLC, a Texas limited liability company ("Nomad Elite"), and allege as follows:

### NATURE OF THE ACTION

1. This is an action for defamation, defamation per se, business disparagement, unauthorized misappropriation of name and likeness and intentional infliction of emotional distress arising out of Defendants' false and malicious statements and videos about Plaintiffs that

1  have harmed Plaintiffs' reputation and business interests and resulted in significant emotional
2  distress for Plaintiff Andrew J. Henderson. In addition, Plaintiff Henderson asserts a claim of
3  liability for stalking against Defendant Arno Gerald Summer for an incident that occurred on May
4  13, 2025.

5  2. Defendants' wrongful conduct has caused and continues to cause irreparable harm
6  to Plaintiffs, including damage to their reputations, business relationships, potential for future
7  economic gain, and emotional distress to Plaintiff Andrew J. Henderson. Defendants have also
8  profited commercially from their tortious and wrongful behavior which profits must be disgorged.

## JURISDICTION AND VENUE

10  3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the
11  action is between a citizen of a State in the United States and a citizen of a foreign State and the
12  amount in controversy exceeds $75,000.

13  4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one
14  Defendant resides in the Western District of Texas and it is believed the events giving rise to this
15  Complaint occurred within this District.

## PARTIES

17  5. Plaintiff Nomad Capitalist, Limited, is a limited company organized under the laws
18  of Hong Kong with its principal place of business located in Hong Kong.

19  6. Plaintiff Andrew J. Henderson is an individual that resides in the country of Georgia.

20  7. Defendant Nomad Elite, LLC. is a limited liability company organized under the
21  laws of Texas with its principal place of business located at 9901 Brodie Lane, Suite 160 PMB657,
22  Austin, Texas 78748.

23  8. Upon information and belief, Gerald Summer is an individual that resides in Texas
24  at the following address: 1616 Sycamore Avenue, McAllen, Texas 78501.

## FACTUAL ALLEGATIONS

26  9. Plaintiff Nomad Capitalist is a business that specializes in providing consultancy
27  services, financial planning, and immigration strategies to high-net-worth individuals seeking to
28

optimize their personal and business interests globally. Plaintiff operates in multiple countries, including the United States.

10. Plaintiff Nomad Capitalist is a respected business within the international community. It has helped more than 2,000 happy clients with their international plans in more than 100 countries. It has a robust internal team and a large, global network of professionals, including attorneys, accountants, real estate professionals, and other global experts offering citizenship and residence strategies, legal compliance, and tax reduction techniques. It has had more than 2,000 media appearances and has been featured, *inter alia*, on BBC, Business Insider, Fox, CNN, Robb Report, and CBS News.

11. Plaintiff Andrew Henderson is the founder of Nomad Capitalist, Limited.

12. Plaintiff Andrew Henderson often tests out visa, multiple passport and multiple citizenship opportunities, by applying for them himself, so that he can better advise Nomad Capitalist's clients regarding these opportunities.

13. In the scope of his employment with Nomad Capitalist, Mr. Henderson frequently posts comments and publishes videos on YouTube providing advice and perspectives regarding Nomad Capitalist's consultancy services, financial planning, and international immigration strategies as described above and herein.

14. Andrew Henderson is the face of Nomad Capitalist and is featured in most of the videos that Nomad Capitalist produces.

15. Andrew Henderson's videos, comments, and perspectives are integral to the success, trust, goodwill, and success of Nomad Capitalist.

16. In fact, Nomad Capitalist's YouTube page has more 1.6 million subscribers, and some of Nomad Capitalist's videos have received much more than 3.5 million views.

17. Defendant Nomad Elite is a competitor in the same industry, providing similar services to individuals and businesses seeking immigration, financial, and business optimization strategies.

3

18. Upon information and belief, Defendant Gerald Summer is the founder and chief officer of Defendant Nomad Elite.

19. Defendant Nomad Elite also publishes and posts videos on YouTube, substantially all of which feature Defendant Gerald Summer.

20. In or around November 2022, Nomad Elite posted one or more videos utilizing Andrew Henderson's likeness without authorization and making untrue statements about Nomad Capitalist's promotion of a Malaysia visa program.

21. Nomad Capitalist immediately responded with a cease-and-desist letter identifying the false and defamatory statements, but otherwise, chose to take no further action with respect to that specific video.

22. Nomad Elite, however, did not cease and desist from its attempts to defame Plaintiffs Nomad Capitalist and/or Andrew Henderson.

23. On or about December 1, 2023, January 1, 2024, and June 8, 2024, Defendants made and published false and defamatory statements about Plaintiffs in videos published on Nomad Elite's YouTube channel, including but not limited to:

   a. Defendants falsely claimed that Plaintiffs engage in illegal or unethical business practices;
   b. Defendants stated that Plaintiffs' services are substandard, misleading, and harmful to clients;
   c. Defendants published statements accusing Plaintiffs of fraud, misrepresentation, and dishonesty in its business dealings; and
   d. Defendants made statements suggesting that Plaintiffs' clients are being exploited or misled by Plaintiffs' services.

24. Defendants Gerald Summer and Nomad Elite made the following false, defamatory, and disparaging statements, which include but are not limited to:

   a. Nomad Capitalist/Henderson "is being defeated in certain locations, why? Real relocation agencies are living in these places." (12/2023 & 01/2024)

b. Nomad Capitalist/Henderson "is losing many battles"; "he is losing to us in certain countries"; "he is losing to Raphael in Dubai." (01/2024)

c. "Chances of getting an inferior service are high." (01/2024)

d. "Some of these [negative] comments I believe were written by family members and close personal friends of Henderson." (01/2024)

e. Nomad Capitalist "posted lots of inaccurate information" about Paraguay recently on YouTube. (01/2024 comment section)

f. Nomad Capitalist "is a massive brokerage, nothing more." (01/2024 comment section)

g. Nomad Capitalist's founder, Andrew Henderson, "is not an honest expat; he never integrated anywhere. He speaks zero foreign languages fluently." (01/2024 comment section)

h. Regarding an ongoing lawsuit: "Contract said that they are going to be doing business with the company that is in Hong Kong, not with Nomad Capitalist LLC that's incorporated in Arizona." (06/2024)

i. Regarding the same ongoing lawsuit: That Nomad Capitalist "seems to be wanting the best part of the United States law and the business system but they don't want to comply with US legal requirements." (06/2024)

j. "If this doesn't convince you that NC and Henderson *may be a scam*, I want you to consider the people AH does business with . . . ." (06/2024)

25. These false and defamatory statements were made publicly and have been disseminated via Nomad Elite's YouTube channel to third parties, including potential clients, partners, and the general public.

26. As many as 20 current, former, and potential clients have all raised specific inquiries with Nomad Capitalist regarding Defendants' defamatory videos/comments.

27. Multiple potential clients, who inquired specifically about Defendants' defamatory videos, then decided not to purchase Nomad Capitalist's services.

5

28.   Upon information and belief, additional potential clients watched the defamatory videos and saw the defamatory comments and decided not to utilize Nomad Capitalist's services for that reason.

29.   Upon information and belief, multiple current, former, and potential clients have chosen not to use or re-use Nomad Capitalist's services due to Defendants' false and defamatory statements and videos.

30.   Nomad Capitalist's engagement contracts with individual clients each generate between $15,000.00 and $100,000.00 in revenue, depending on the specific services that Nomad Capitalist is hired to perform for that specific client.

31.   A single Nomad Capitalist client that purchases holistic international planning, and also retains Nomad Capitalist's services to implement that plan, frequently results in $100,000.00 in revenue for Nomad Capitalist.

32.   As a result, Nomad Capitalist believes that it has lost significantly more than $75,000.00 in revenue due to Defendants' defamation of Plaintiffs.

33.   The statements made by Defendants were not only false but were made with actual malice, meaning that Defendants acted with knowledge of the falsity of the statements or with reckless disregard for the truth.

34.   Straightforward research in the industry by Defendants Nomad Elite and Gerald Summer would have revealed the falsehood of these allegations.

35.   Defendants should have engaged in such research prior to engaging in such defamatory, disparaging, and false light allegations.

36.   For example, Nomad Capitalist is a legitimate company, not a "scam," as any review of the company's operations would have shown and Andrew Henderson is a legitimate businessman, not a scammer.

37.   Likewise, the contract referenced in the June 2024 video said that the contract was between the client and both the company in Hong Kong and the Arizona Nomad Capitalist affiliate, as any review of the contract would have shown.

38. Nomad Capitalist also has many subject matter experts working in numerous areas, including law, tax, and real estate, as even any review of Nomad Capitalist's website would have shown.

39. Each custom-tailored internationalization plan that Nomad Capitalist creates for its clients also involves specific input provided by Nomad's founder, Andrew Henderson.

40. Defendants would have learned each of these points had they engaged in even a simple review of Nomad Capitalist's website or discussed the matter thoroughly with even one former Nomad Capitalist client before falsely alleging that Nomad Capitalist is "nothing more" than a "massive brokerage."

41. As a direct result of Defendants' false statements, Plaintiffs have suffered significant harm, including but not limited to:

    a. Loss of business relationships, clients, and possible clients;

    b. Damage to their reputation and goodwill in the industry;

    c. Severe emotional distress and reputational harm to its officers and employees, most especially to Plaintiff Andrew Henderson;

    d. Financial losses resulting from the loss of clients and business opportunities.

42. Defendants' conduct constitutes defamation and business disparagement, and it continues to harm Plaintiffs' business interests.

43. In addition to defamation and business disparagement, Defendants' actions also constitute the tort of False Light Invasion of Privacy by publicly portraying Plaintiffs in a false light and a misleading light.

44. Furthermore, Defendants' false statements are defamation per se, as they impute criminal behavior (fraud) and suggest dishonesty or unethical conduct in Plaintiffs' business practices, which are statements that are considered defamatory on their face.

45. These instances of defamation also constituted "harassing behavior" in the meaning of Tex. Civ. Prac. & Rem. Code § 85.001.

7

## CAUSES OF ACTION

### COUNT I
### (Defamation)

46. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

47. Defendants' statements, as described above, were false and defamatory, and made with actual malice.

48. In addition, Defendants' videos/posts, as a whole, constitute defamatory publications.

49. The defamatory statements were made with the intent to harm Plaintiffs' reputations and business interests.

50. As a result of Defendants' defamation, Plaintiffs have suffered reputational harm and financial damages, and Plaintiff Henderson has suffered severe emotional distress.

### COUNT II
### (Defamation per se)

51. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52. Defendants' statements fall under the category of defamation per se because they impute criminal conduct (fraud) and suggest that Plaintiffs are dishonest, unethical, or untrustworthy in their business practices. These are statements that, by their nature, are harmful and damaging without the need for Plaintiffs to prove actual harm.

53. In addition, Defendants' videos/posts, as a whole, constitute publications that are defamatory per se and create false impressions because they falsely accuse and portray Plaintiffs as being involved in criminal activity (fraud).

54. Specifically, Defendants' statements that Plaintiffs are engaged in fraud and misrepresentation damage Plaintiffs' reputation in the business community and public perception, which are defamatory on their face.

55. Defendants' statements that Plaintiffs are incompetent in their field of business or unfit to practice in their field of business damage Plaintiffs' reputation in the business community and public perception, which are defamatory on their face.

56. In addition, Defendants' videos/posts, as a whole, constitute publications that are defamatory per se because they falsely accuse and portray Plaintiffs as being incompetent in their field of business or unfit to practice in their field of business.

57. As a result of Defendants' defamatory statements per se, Plaintiffs have suffered reputational harm, loss of business, and other economic damages.

## COUNT III
### (Business Disparagement)

58. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

59. Defendants intentionally and maliciously disparaged Plaintiff Nomad Capitalist's business, services, and reputation by making false and harmful statements that caused damage to Plaintiff Nomad Capitalist's business interests.

60. As a result of Defendants' business disparagement, Plaintiff Nomad Capitalist has suffered economic damages, including loss of clients and business opportunities.

## COUNT IV
### (Liability for Stalking Under Tex. Civ. Prac. & Rem. Code § 85.001 et seq.)

61. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

62. On May 13, 2025, when Mr. Henderson was visiting Asuncion, Paraguay on business, a stalking incident occurred involving Defendant Gerald Summer.

63. Mr. Henderson was at a mall in Asuncion with several colleagues when he was approached by Mr. Summer.

64. Upon information and belief, this encounter was not a coincidence but instead was the result of Mr. Summer somehow tracking Mr. Henderson's whereabouts, which also contributed to Mr. Henderson experiencing fear for his safety and that of his loved ones.

65. The incident involved Mr. Summer attempting to approach Mr. Henderson about this lawsuit and the possibility of settling the claims therein.

66. Mr. Henderson, however, clearly rebuffed Mr. Summer and clearly demanded that Mr. Summer leave him alone, but Mr. Summer did not stop his harassing behavior after being rebuffed and did not immediately leave him alone, including following Mr. Henderson when he left the indoor portion of the café and moved to the outdoor portion thereof.

67. Instead, while engaging in harassing behavior, Mr. Summer threatened to file a false police report against Mr. Henderson claiming that it was Mr. Henderson that was harassing him and came to Paraguay to find him, which is untrue, and upon information and belief actually filed such a false report against Henderson which constituted an "offense" against Henderson.

68. This harassing behavior was immediately reported by Mr. Henderson to the local police as a stalking offense.

69. This instance of harassment and Mr. Summer's threat of filing false charges against Mr. Henderson, combined with Mr. Summer's past harassing behavior, together caused Mr. Henderson to reasonably fear for his safety and for the safety of his loved ones.

70. Harassing behavior also occurred on previous occasions in the form of the defamations and defamatory statements indicated above and with respect to other instances of defamation not specifically detailed herein.

71. Mr. Henderson suffered damage due to this stalking incident and should be awarded both actual damages and exemplary damages in connection therewith.

**COUNT V**
**(Misappropriation of Name/Likeness)**

72. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

10

73. From December 2023 to the present, Defendants have used Andrew Henderson's name and likeness in multiple YouTube videos for the commercial purpose of increasing Defendants' own YouTube viewership and attracting new customers that are generally interested in Defendants' competitor Nomad Capitalist.

74. In many, if not all, videos, Henderson's likeness was caricatured in a grotesque manner as a way to disparage Henderson and portray Defendants as a preferrable commercial option for potential customers interested in relocating abroad.

75. All such uses of Andrew Henderson's name and likeness were undertaken without Mr. Henderson's permission, which Defendants were required to obtain by law prior to using Mr. Henderson's name and likeness for the commercial purpose of furthering Defendants' own business interests.

76. Defendants' unauthorized use of Mr. Henderson's likeness has resulted in Henderson suffering emotional distress damages as well as special damages including, without limitation, illicit profits gained by Defendants from customers that otherwise would have hired Nomad Capitalist, which illicit profits must be disgorged.

## COUNT VI
### (Intentional Infliction of Emotional Distress)

77. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

78. Defendants' systematic and continual defamation and misappropriation of Mr. Henderson's name and likeness from December 2023 to the present constitutes a pattern of harassment by which Defendants obviously intended to inflict severe emotional distress on Mr. Henderson, a business competitor and leader in their shared industry.

79. Defendants' outrageous conduct also includes Defendants, on March 11, 2025, publicizing a purported and alleged prior misdemeanor charge against Mr. Henderson and strongly implying to their YouTube audience, without any evidence in support thereof, that the

11

misdemeanor charge was due to fraudulent or harassing behavior by Henderson, which such behaviors never occurred.

80. This pattern of harassment culminated recently in May 2025 with an outrageous in-person instance of stalking/harassment that caused Mr. Henderson to fear for his safety and exacerbated and contributed to his severe emotional distress.

81. This pattern of harassment, and certain specific instances thereof, together and individually constitute outrageous conduct.

82. Upon information and belief, Defendants actually intended to cause Mr. Henderson severe emotional distress or recklessly ignored the obvious effect that his outrageous actions would have.

83. As a result of Defendants' outrageous actions, Mr. Henderson actually suffered severe emotional distress for which he must be compensated by Defendants.

## JURY DEMAND

84. Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Award Plaintiffs actual and punitive damages, in an amount to be determined at trial, for the harm caused by Defendants' defamatory statements and business disparagement, and for the emotional distress caused thereby, and for the harm caused by Mr. Summer stalking Mr. Henderson, Defendants' unauthorized use of Henderson's name and likeness, and Defendants' intentional infliction of emotional distress on Henderson;

B. Disgorge profits of Defendants related to customers that Defendants attracted that otherwise would have hired Nomad Capitalist but for Defendants defamation and other tortious behaviors;

C. Award Plaintiffs general damages based on presumed damage to their reputations;

D. Grant an injunction prohibiting Defendants from making further defamatory statements or disparaging Plaintiffs or Plaintiffs' business;

E.  Grant an injunction or other equitable relief requiring Defendants to remove the offending videos from YouTube or any other public media and permanently delete or destroy the offending videos;

F.  Grant an injunction restraining Mr. Summer from contacting Mr. Henderson other than through an attorney or from approaching Mr. Henderson in person; and

G.  Award Plaintiffs their costs, expenses, and reasonable attorney's fees incurred in this action;

H.  Award such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** on June 4, 2025.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff*

13